UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ROBERT W. HALL, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED          PLAINTIFF

VS.                    CASE NO.: 1:09-cv-0057 JLH

EQUITY NATIONAL LIFE INSURANCE COMPANY
merged into LIFE INVESTORS INSURANCE COMPANY
OF AMERICA n/k/a/ TRANSAMERICA LIFE INSURANCE
COMPANY; LIFE INVESTORS INSURANCE COMPANY
OF AMERICA n/k/a TRANSAMERICA LIFE INSURANCE
COMPANY and AEGON USA, INC., parent company of LIFE
INVESTORS INSURANCE COMPANY OF AMERICA n/k/a
TRANSAMERICA LIFE INSURANCE COMPANY          DEFENDANTS

Plaintiff's Response in Opposition
to Defendants' Motion to Deny Class Certification
and Plaintiff's Cross-Motion for Discovery
and Supporting Memorandum of Law

INTRODUCTION

Defendants' characterization of the events leading

to the filing of this action are both misleading and

woefully incomplete.  This action is one of at least 17

parallel class actions which have been filed against

Defendant due to the abrupt alteration in 2006 of its

longstanding claims procedure with respect to the

1

meaning of the term "actual charges," as contained in
its policies of supplemental health insurance.
Defendants devote approximately 15 pages to the merits
of Plaintiff's substantive claims in this action and
the contents of the *Runyan* settlement. Those are not
the issues at hand, though Plaintiff herein is prepared
if need be to demonstrate that the settlement is
unfair, unreasonable and inadequate to compensate
absent class members for Defendants' wrongful conduct.

What is before this Court is the underlying
validity of the "final judgment" in *Runyan*, a judgment
obtained in circumstances quite irreconcilable with all
notions of full faith and credit, *res judicata*,
collateral estoppel or release. As fully detailed
below, the *Runyan* action does not in any way preclude
the class claims alleged herein by Plaintiff.

## ARGUMENT

This action is one of numerous, parallel class
actions pending against Defendants. The very first of
the 16 other related actions filed against the
Defendants was *Gooch v. Life Investors Ins. Co. of Am.*,

2

No. 1:07-CV-00016 (M.D. Tenn.), on March 30, 2007.[1]   All

16 cases were either originally filed in or removed by

Defendants to federal district courts. In early 2009,

without notifying any of these courts or their counsel

involved, Defendants negotiated and entered into a

settlement agreement with counsel representing

plaintiffs in just six of those cases: *Pipes, Runyan*

---

[1] The 16 other cases are: *Belue v. Aegon USA, Life Investors Ins. Co. of Amer. and Transamerica Ins. Co.*, Case No. 7:08-cv-2318(D.S.C., Spartanburg Div'n)(Judge G. Ross Anderson, Jr.); *Brown v. Life Investors Ins. Co. of Amer.*, Case No. 2:08-cv-00217(N. D. Miss., Delta Div'n)(Judge W. Allen Pepper); *Gooch v. Life Investors Ins. Co. of Amer. and AEGON, USA, Inc.*, Case No. 07-cv-00016(M. D. Tenn., Columbia Div'n)(Judge William J. Haynes, Jr.); *Harris v. Transamerica Life Ins. Co.*, Case No. 09-cv-00013(M. D .La.)(Judge John Parker); *Lindley v. Life Investors Ins. Co. of Amer.*, No. 08-cv-00379(N. D. Okla., Tulsa Div'n)(Judge Claire V. Egan); *Mitchell v. Life Investors Inc. Co. of America*, Case No. 4:07-cv-04084(W. D. Ark., Texarkana Div'n)(Judge Harry F. Barnes); *Nolan v. Life Investors Ins. Co. of America, AEGON USA, Inc. and Transamerica Life Ins. Co.*, Case No. 3:08-cv-00839 (M. D. La.)(Judge James Brady); *Pipes v. Life Investors Ins. Co. of America*, Case No. 1:07-cv-35 (E. D. Ark., Northern Div'n)(Judge Susan Weber Wright); *Runyan v. Transamerica Life Ins. Co.*, Case No. 6:08-cv-6034(W.D. Ark., Hot Springs Div'n)(Judge Jim Larry Hendren); *Smith v. Life Investors Ins. Co. of America*, Case No. 2:07-cv-00681(W. D. Penn., Pittsburgh Div'n)(Judge Terrence F. McVerry); *Weidman v. Life Investors Ins. Co. of America*, Case No. 2:08-cv-12870(E. D. Mich., Detroit Div'n)(Judge Arthur J. Tarnow); *Wright v. Life Investors Ins. Co. of America*, Case No. 2:08-cv-00003(N. D. Miss., Delta Div'n)(Judge W. Allen Pepper); *Pearce v. Bankers United Life Assurance*, Case No. 08-cv-00809(M. D. La.)(Judge James Brady); *Allred v. Life Investors Ins. Co. of America*, Case No. 09-cv-00407(S. D. Miss.)(Judge Tom S. Lee); *Dauzat v. Transamerica Life Ins. Co.*, Case No. 09-cv-00001(W.D. La.)(Judge Dee Drell).

(federal), *Ross, Weidman, Harris* and *Nolan*.

Subsequently, in March, 2009, rather than submitting the settlement agreement for judicial approval in any of those six cases, putative "class counsel" involved in those cases filed a brand-new, nationwide class action in Arkansas state court, the *Runyan* action, which produced the "final judgment" Defendants claim precludes the instant class action.

After they filed in state court, counsel for plaintiffs and defendants then filed a Joint Status Report in *Harris v. Transamerica Life Ins. Co.*, Case No. 09-cv-00013(M. D .La.)(Judge John Parker) on April 23, 2009, representing that no settlement efforts had ever been attempted between the parties. (Joint Status Report, attached as Ex. A.) Yet, approximately one week before the filing of the *Harris* Joint Status Report, the *Runyan* settlement agreement had already been executed and filed with the Arkansas state court. In fact the settlement was preliminarily approved by the Arkansas state court on April 23, 2009. (Order Granting Preliminary Approval to Class Action

4

Settlement and Directing Notice to Settlement Class,
attached as Ex. B.)

Contrary to Defendants' claims, this action is in
no way precluded by *Runyan*. The *Runyan* final judgment
is invalid under both Arkansas and federal law. For
multiple reasons the *Runyan* judgment is not entitled to
full faith and credit, nor is it binding upon absent
class members due to *res judicata*, collateral estoppel
or the "release" contained in the *Runyan* "settlement."
While it is true that federal courts must give full
faith and credit to judicial proceedings in state
courts, it is also true that federal courts need only
give state court judgments "the same preclusive effect
they would be given by other courts in the state from
which the judgment emerged." *Butler v. City of North
Little Rock, Ark.*, 980 F.2d 501, 503 (8th Cir. 1992).
Thus, the Court must examine Arkansas state law to
determine whether *Runyan* precludes this action.

First and most importantly, under Arkansas law, the
state court in *Runyan* did not possess subject-matter
jurisdiction over the underlying suit, as there was no

"justiciable controversy" before it. The Arkansas
Supreme Court has defined jurisdiction as "the power to
hear and determine the subject-matter in controversy
between the parties to the suit; to adjudicate or
exercise any judicial power over them." *Young v. Smith*,
331 Ark. 525, 529, 964 S.W.2d 784, 786 (Ark. 1998)
(quoting *Lamb & Rhodes v. Howton*, 131 Ark. 211, 213,
198 S.W. 521, 522 (Ark. 1917). Arkansas courts
"normally decide only cases and controversies which
will actually affect the rights of litigants."
*Nathaniel v. Forrest City Sch. Dist. No. 7*, 300 Ark.
513, 515, 780 S.W.2d 539, 540 (1989). Thus, judgment
may only be had where there is a justiciable
controversy between adverse parties. *Sharon McGee v.
Arkansas State Bd. of Collection*, 375 Ark. 52, 58, 289
S.W.3d 18, 23 (Ark. 2008). In *Runyan*, the collusive
actions of both class and defense counsel demonstrate
that there was neither a controversy nor an adversarial
realtionship between the parties. Rather, the Arkansas
*Runyan* filing was a vehicle designed to shield the
Defendants from liability and enrich plaintiff's

6

counsel at the expense of absent class members.

Even if the Arkansas court had actually possessed subject matter jurisdiction over the parties in *Runyan*, *res judicata* only applies where "the first suit was fully contested in good faith." *Butler  v. City of North Little Rock, Ark.*, 980 F.2d 501, 504 (8th Cir. 1992). "If, however, there was 'fraud or collusion in the procurement of the first judgment' *res judicata* does not apply." *McGee v. McGee*, 100 Ark. App. 1, 4, 262 S.W.3d 622, 625 (Ark. Ct. App. 2007). Again, the circumstances surrounding the settlement and subsequent filing of *Runyan* raise serious doubts about the good faith of the parties.

Collusion is evident from the time line. On April 17, 2009, the *Runyan* class action settlement agreement was finalized. The settlement was executed and filed with the court on April 20, 2009. At the same time, one of the *Runyan* plaintiff representatives, Marion Harris, was also the plaintiff representative in *Harris v. Transamerica Life Insurance Company, et al.*, pending in the Middle District of Louisiana. On April 23,

2009, the same day the Arkansas state court gave
preliminarily approval to the settlement agreement in
*Runyan*, Plaintiff Harris and Defendant Transamerica
filed a Joint Status Report in *Harris*, as ordered by
presiding Judge Parker.

The relevant portion of the *Harris* Joint Status
Report reads as follows:

*L.   Settlement*

*1.   Please set forth what efforts, if any,
the parties have made to settle this case.*

***None***

*2.   Do the parties wish to have a
settlement conference:*

***[ X ] YES      [      ] NO***

*Is (sic) your answer is yes, at what stage of
litigation would a settlement conference be
most beneficial?*

> ***The parties believe that a settlement
> conference in September 2009 (after
> the completion of some fact discovery***

8

*and before expert reports are due)*

*would be beneficial.* (Italics and bold

type added for emphasis).

Since the parties in *Harris* fully intended that the

*Runyan* settlement would already be finally approved "in

September 2009", it is unclear how they "believed" a

conference at that time would be "beneficial." In

fact, on May 15, 2009, a scant three weeks after the

*Harris* Joint Status Report was filed, the parties filed

a motion to stay that action due to the *Runyan*

"settlement." As a result, due to the absence of

fully contested good faith litigation before the

Arkansas state court, Arkansas law does not grant the

*Runyan* judgment preclusive effect under the theory of

*res judicata* or collateral estoppel. *East Texas Motor*

*Freight Lines v. Freeman*, 289 Ark. 539, 543, 713 S.W.2d

456, 459 (Ark. 1986).

For the same reasons, the "release" granted by the

settlement agreement in *Runyan* is similarly ineffective

in barring Plaintiff's action before this Court. Even

9

if the *Runyan* final judgment were to be considered
valid under Arkansas law, this Court must extend its
inquiry and ask whether Plaintiff was afforded due
process of law by the Arkansas court. *Butler*, *supra* at
504. "Every State's law on the preclusiveness of
judgments is pervasively affected by the supreme law of
the land. To be valid in the rendition forum, and
entitled to recognition nationally, a state court's
judgment must measure up to the requirements of the
Fourteenth Amendment's Due Process Clause." *Matsushita
Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 395, 116
S.Ct. 873, 888 (1996) (Ginsberg, J. *concurring in part
and dissenting in part*)(citing *Kremer v. Chemical
Constr. Corp.*, 456 U.S. 461, 482-483 (1982))

In class actions, due process requires that the
named plaintiff(s) adequately represent the interests
of absent class members at all times, in order for the
class members to be bound by any judgment issued.
*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812,
105 S.Ct. 2965, 2974 (1985). It is hard to imagine
that class counsel in *Runyan* could "adequately

10

represent" the interests of absent class members while
filing representations in federal court in order to
conceal a collusive settlement pending in state court.
Only after the *Runyan* settlement received preliminary
approval in Arkansas state court, and notice was sent
to absent class members, did class counsel and
Defendants file their motions to stay the parallel
litigation pending in 16 federal courts.[2]   Defendants
continue to try to obscure the actual sequence of
events occurring in *Runyan*.   As recently as May 14,
2010, in opposition papers submitted to the Arkansas
Supreme Court regarding a pending motion in one of the

---

[2]      In light of Defendants' former actions to shelter the
*Runyan* settlement from a predictable chorus of foul play
complaints, Defendants' latest opposition to Plaintiff's second
request for extension of time to respond to their motion to
dismiss class allegations may be seen as a continuation of that
hide-the-ball strategy.

In their opposition, Defendants stated, " *Plaintiff's*
*requested relief would unreasonably delay the Court's*
*determination of a threshold question of law in this case,*
*namely, whether plaintiff's class claims are barred by the Runyan*
*Final Judgment, and would thwart the strong public policies*
*underlying the doctrine of res judicata and the resolution of*
*class litigation.*"[Defendants' Opposition to Plaintiff's Motion
for Extension of Time, p.3 Emphasis added] For Defendants, in
this litigation, to speak of the public policies of res judicata
and resolution of class litigation as the bulwark supporting
their position resonates with the credibility of a test cheater
extolling the virtues of the test.   Here, Defendants are all too
anxious to avoid the video replay revealing the cheat sheet.

11

*Runyan* appeals, Defendants stated:

> On March 13, 2009, eight plaintiffs filed this
> action in the Circuit court of Pulaski County,
> consolidating the claims from six pending
> federal actions in the Circuit Court.  *Id*. at
> 14.  Motions to stay were filed in and granted
> by the federal courts pending a decision on
> approval of the settlement by the Circuit
> Court.  On April 23, 2009, the circuit court
> granted preliminary approval to the
> Settlement[.] (Excerpt, page 4,of Defendant-
> Appellees' Memorandum in Opposition to Daniel
> Crager's Motion to Lift Seal From Identified
> Portions of the Record and Motion for Extension
> of Time to File Brief, attached as Ex. C)

The motions to stay, of course, were not filed until

May 15, the day after notice of the settlement was

required to be mailed to class members, well after the

settlement's preliminary approval on April 23.

Defendants' delayed disclosure in the parallel

federal actions contrasted pointedly from their

eagerness to expedite the process of finalizing the

settlement in the Arkansas state court.  To that end,

Defendants claimed they were freeing the Arkansas state

trial court from becoming entangled in the 16 pending

federal actions. In fact, Defense counsel told the

Arkansas state court judge:

The whole reason our clients went and filed all
this stuff [the motions to stay] in federal
court is to free you up to proceed with
adjudicating the class settlement as quickly as
you can, because there are thousands of people
and millions of dollars that are being held up
because of the Gooch [a federal action]
lawyers' fancy filings. [....] [I]t could be a
long time before these people rule on all these
fancy things. Right now, the point is, you are
free to rule on this case however you want to
rule. And we do not want Your Honor to put
this thing on a shelf. We want you to move
quickly because there are thousands of people
impacted by this, and our company is impacted
by it. [....] My point is, we don't want this
Court to slow this case down. We want this
court to proceed quickly. (*Runyan*, excerpt of
transcript of hearing on motion to set aside
preliminary approval, 9/16/09, p. 3, lines 7-
8, also at Bate Stamped 005261, attached as Ex.
D.)

Plaintiff respectfully requests discovery into both

the *Harris* status report and the *Runyan* settlement

negotiations, and ample time for the issuance of a

subpoena to retrieve and review the entire *Runyan*

record as an alternative to dismissal. Such discovery

is absolutely necessary to determine why class counsel

represented to the court in *Harris* that no efforts to

settle the action had been made by the parties, on a

date when an executed settlement agreement between them

13

had already been filed and preliminarily approved by
the *Runyan* court. In addition, it is vitally important
to discover why other attorneys representing absent
class members in ongoing, parallel cases were not given
notice of any settlement negotiations until well after
preliminary approval in *Runyan*.

The MANUAL FOR COMPLEX LITIGATION recommends inquiry
into "[w]ho were the negotiating parties [in the
settlement] and to what extent were they authorized to
proceed with the settlement of their class' claims and
possibly those of other classes?" MANUAL FOR COMPLEX
LITIGATION, 4ᵀᴴ (2004) at §1.46, 53-54. The MANUAL also
suggests certain procedural steps to increase
coordination among related cases, especially where
parallel cases are pending simultaneously in federal
and state courts. Id. at § 20.14. Precautions such as
joint conference calls among all the judges, the
coordination of discovery, and the joint appointment of
experts all help ensure fair and reasonable class
settlements. None of these safeguards were present
here. In fact, the existence of settlement

14

negotiations and the executed "settlement" were kept
secret.

"Among the reasons for examining whether settlement
negotiations were authorized is the danger of defendant
'attorney shopping.'" *Id*. at 59 (quoting *Ace Heating &
Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3rd Cir.
1971)). Even without the issue of collusion,
settlement negotiations kept secret from other class
counsel in parallel cases leads to negotiation, and
therefore settlement, from a position of undeniable
weakness. "[S]ettlement negotiations with less than
all class counsel weaken the class' tactical position
even if the attorney who enters into the negotiations
attempts to represent the class' interests vigorously."
*In re Gen. Motors Engine Interchange Lit.*, 594 F.2d
1106, 1125 (7th Cir. 1979).

Finally, secretive settlement negotiations denies
other class counsel information about the course of the
negotiations which would be relevant to evaluate the
overall fairness of the settlement. "'[T]he options
considered and rejected, the topics discussed, the

15

defendant's reaction to various proposals, and the
amount of compromise necessary to obtain a settlement'
[are] all matters which class counsel excluded from the
negotiations [need] to consider before exercising their
fiduciary duties to the class by accepting the
settlement." *Id.* (quoting *Developments in the Law —
Class Actions*, 89 Harv.L.Rev. 1318, 1562
(1976)).

Judge G. Ross Anderson, Jr., presiding in *Belue*,
one of the parallel proceedings against Defendant
Transamerica, recently noted in his opinion revoking
the *pro hac vice* status of Markham Leventhal, Irma
Solares, and Julianna McCabe, attorneys appearing for
defendant in his court, that "many of the filings and
arguments asserted by [defense] counsel are not offered
in good faith," and "many of the arguments asserted by
the defendants are made in bad faith and are in direct
conflict." *Belue v. AEGON USA, Inc.*, C/A No. 7:08-cv-
3830-GRA, Loislaw Federal District Court Opinions, p.6
(S.C. 2-23-2010).

The circumstances surrounding the settlement of

16

this action: the existence of sixteen already-existing
federal cases, any one of which could have served as
the forum for settlement approval; the collusive
decision to file a new non-adversarial action in
Arkansas state court, and the representation in the
*Harris* Joint Status Report, are both direct and
circumstantial evidence of a collusive settlement, a
negative auction and a subsuming of the interests of
absent class members.

### CONCLUSION

For all of the reasons set forth herein, Plaintiff
Robert Hall earnestly requests that this Court deny
Defendant's Motion to Deny Class Certification and
Eliminate Class Action Allegations, or, in the
alternative, enter an Order allowing Plaintiff
discovery into the Joint Status Report filed in *Harris*,
as well as the settlement negotiations in *Runyan*, and
granting Plaintiff sufficient time for the issuance of

a subpoena to obtain and review the entire *Runyan*
record.

                    Respectfully submitted,

                    MATTHEWS, SANDERS & SAYES
                    Attorneys for the Plaintiffs


         By:_____/s/ Doralee Chandler____
                    Doralee Chandler #98179
                    Gail O. Matthews #60025
                    825 West Third Street
                    Little Rock, AR 72201
                    Telephone:  501/378-0717
                    dchandler@msslawfirm.com
                    rsanders@msslawfirm.com



                    Frank H. Tomlinson
                    Attorney at Law
                    15 North 21st Street,
                    Suite 302
                    Birmingham, AL 35203
                    Tel. (205) 326-6626
                    Fax (205) 328-2889
                    htomlinson@bellsouth.net

**Certificate of Service**

I hereby certify that on the 27th day of May, 2010, a true and correct copy of the above and foregoing instrument was duly served on the other parties herein by electronic correspondence or by mailing a copy of same, postage prepaid, to:

Mr. John K. Baker
Mitchell, Williams, Selig,
Gates & Woodyard, PLLC.
425 West Capitol Ave., Suite 1800
Little Rock, Arkansas   72201


Mr. Markham R. Leventhal
Jorden Burt LLP
777 Brickell Ave., Suite 500
Miami, Florida 33131

/s/ Doralee Chander
Doralee Chandler

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARION HARRIS, | ) | CASE No. 09 cv 00013 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | JUDGE JOHN PARKER |
| | ) | |
| TRANSAMERICA LIFE INSURANCE | ) | |
| COMPANY and AEGON USA, INC. | ) | MAGISTRATE RIEDLINGER |
| | ) | |
| Defendants. | | |

## STATUS REPORT

Plaintiff and Defendants Transamerica Life Insurance Company and AEGON USA, Inc.,[1]

through their undersigned attorneys, hereby submit the following Status Report:

**A.     JURISDICTION:**

What is the basis for the jurisdiction of the Court?

Defendant asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff contends that this Court lacks subject matter jurisdiction and has moved this Court for remand of the matter to state court.

**B.     BRIEF EXPLANATION OF THE CASE:**

**1.     Plaintiff's claims:**

Plaintiff contends that Defendants breached their insurance contract with Plaintiff by improperly reducing cancer insurance benefits adjusted on an actual charges basis. Defendants' unilateral change in their payment of actual charges benefits was arbitrary and capricious entitling Plaintiff to statutory penalties, costs and attorneys' fees.

**2.     Defendants' claims:**

Defendants deny any liability. In or about September 2006, plaintiff's late husband, James J. Harris, purchased a supplemental cancer insurance policy from Transamerica Life Insurance Company (the "Policy"). This case involves the meaning of the term "actual charges" as used in the Policy. The Policy pays limited benefits to the insured for certain losses incurred

---

[1] Defendant AEGON USA, Inc. does not waive and hereby preserves its objection to personal jurisdiction in this case.

EXHIBIT
A

upon diagnosis and treatment for cancer. Transamerica Life contends that, as a matter of law, this Court should interpret the Policy according to the plain and ordinary meaning of the words "actual charges." The "actual charges" for medical services means the actual amount that the medical provider has agreed to charge and accept as payment in full for the medical services rendered. "Actual charges" cannot reasonably be interpreted to mean a medical provider's "chargemaster" rates or fictitious "list" prices, which no person or entity is actually obligated to pay. Transamerica Life further contends that the plaintiff has been paid all benefits due under the Policy, including benefits for "actual charges," and that it has acted in good faith in processing and paying the plaintiff's claims.

AEGON USA, Inc. is a holding company. It objects to this action and denies any and all liability because it is not an insurance company. AEGON USA, Inc. does not design or develop the terms for any insurance policy, does not sell, underwrite, issue or administer any insurance policy, does not receive, administer, adjudicate, handle or make any payment of claims, and is not in any way responsible for the Policy.

## C.   PENDING MOTIONS:

List any pending motion(s), the date filed and the basis of the motion(s):

1.   Plaintiff's Motion to Remand (Doc. No. 5) and Memorandum in Support of Plaintiff's Motion to Remand (Doc. No. 5-2), filed January 26, 2009 seeking remand of the action to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana. The Motion is not yet fully briefed in accordance with the Court's Order dated February 20, 2009 (Doc. No. 15).

2.   Defendants' Objections to Characterizations of The Melton and Wilson Declarations as "Not Relevant" in the Ruling on Motion for Jurisdictional Discovery (Doc. No 16), filed March 3, 2009. Defendants' object to certain statements in the Magistrate Judge's Ruling on the Motion for Jurisdictional Discovery (Doc. No. 13), and request that the characterization of the Melton and Wilson Declarations be deleted from the Ruling.

## D.   ISSUES:

List the principal legal issues involved and indicate whether or not any of those issues are in dispute:

### 1.   Plaintiff's Issue(s)

Whether the Defendants' breached their insurance contract with Plaintiff by improperly reducing actual charges benefits; and

Whether Defendants' conduct was arbitrary and capricious entitling Plaintiff to statutory penalties, costs and attorneys' fees.

-2-

**2.   Defendants' Issue(s)**

Whether dollar amounts set forth on medical provider "statements," "print outs," or "bills" that no one is actually paying or obligated to pay constitute the "actual charges" for medical services rendered; and

Whether Transamerica Life is obligated under the terms of the Policy to pay "actual charges" benefits for arbitrary "list prices" created by medical providers in situations where such list prices are not genuinely being billed to, charged to, or paid by the insured, a covered person, or any third party expected to pay for the insured's medical care.

**E.   DAMAGES:**

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

1.   **Plaintiff's calculation of damages:** Plaintiff has not calculated damages but has stipulated that the amount in controversy falls below this Court's jurisdictional limit.

2.   **Defendants' calculation of offset and/or plaintiff's damages:** Defendant does not believe that plaintiff is entitled to any damages. All benefits due and owing under the Policy have been paid in full.

3.   **Counter claimant/cross claimant/third party's calculation of damages:** N/A.

**F.   SERVICE:**

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue:

Defendant AEGON USA, Inc. objects to personal jurisdiction in this case. *See* Answer and Defenses of AEGON USA, Inc. (Doc. No. 8).

**G.   DISCOVERY:**

1.   Have the initial disclosures required under FRCP 26(a)(1) been completed?

[   ] YES    [ X ] NO

A.   Do any parties object to initial disclosures:

[   ] YES    [ X ] NO

For any party who answered *yes*, please explain your reasons for objecting.

        B.      Please provide any stipulations reached by the parties with regard to FRCP 26(a)(1) initial disclosures.

2.      Briefly describe any discovery that has been completed or is in progress:

        By plaintiff(s):   None.

        By defendant(s): None.

3.      Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought?)

Medical records, confidential business records, and third party documents will be sought in this case. The parties believe that a confidentiality and protective order (to include HIPAA compliant provisions) should be entered. The parties will submit a proposed order for the Court's consideration.

        Will information that is otherwise privileged be at issue?

Yes. In accordance with Rule 26(b)(5), Fed. R. Civ. P., the parties will produce a privilege log listing any documents withheld from discovery on the basis of privilege.

4.      Discovery from Experts:

        Identify the subject matter(s) as to which expert testimony will be offered by:

        By Plaintiff(s): Expert testimony is expected to be offered by Plaintiffs relating to health insurance industry and medical services provider billing practices.

        By Defendant(s): Expert testimony is expected to be offered by Defendants relating to health insurance industry and medical services provider billing practices.

## H.   PROPOSED SCHEDULING ORDER:

1.      Recommended deadlines for amending the complaint, or adding new parties, claim, counter claims or cross claims:

        **Plaintiff: August 31, 2009**

        **Defendant:   May 22, 2009**

2.      Recommended deadlines for completion of fact discovery:

A.   Exchanging initial disclosures required by FRCP 26(a)(1):  **May 22, 2009.**

B.   Filing all discovery motions and completing all discovery except experts:  **May 7, 2010.**

3.   Disclosure of identities and resumes of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

Plaintiff(s):   **December 16, 2009.**

Defendant(s):  **January 15, 2010.**

4.   Exchange of expert reports:

Plaintiff(s):   **January 15, 2010.**

Defendant(s):  **February 16, 2010.**

5.   Completion of discovery from experts:  **April 16, 2010.**

6.   Filing dispositive motions:  **May 28, 2010.**

7.   If the general outline of proposed deadlines set forth in numbers 1-6 does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

I.   **TRIAL:**

1.   Has a demand for trial by jury been made?

[   ] YES     [ X ] NO

2.   Estimate the number of days that trial will require.

Five (5) days.

J.   **OTHER MATTERS:**

Are there any specific problems the parties wish to address at the scheduling conference?

[   ] YES     [ X ] NO

1.   If the answer is yes, please explain.

2.      If the answer is *no*, do the parties want the Court to cancel the scheduling conference and enter a Scheduling Order based on the deadlines set out in this report?

[X] YES    [  ] NO

K.   **ALTERNATIVE DISPUTE RESOLUTION ("ADR"):**

1.      Several ADR techniques are available through the Court and may be helpful in your case. These include early neutral evaluation, mediation, and summary jury trial. Do the parties wish to engage in alternative dispute resolution proceedings?

[  ] YES    [X] NO

2.      If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

L.   **SETTLEMENT:**

1.      Please set forth what efforts, if any, the parties have made to settle this case.

None.

2.      Do the parties wish to have a settlement conference:

[X] YES    [  ] NO

Is your answer is *yes*, at what stage of litigation would a settlement conference be most beneficial?

The parties believe that a settlement conference in September 2009 (after the completion of some fact discovery and before expert reports are due) would be beneficial.

M.   **CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE:**

You have the right to waive your right to proceed before a United States District Judge and you may instead consent to proceed before a United States Magistrate Judge.

Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. §636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or court trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this Court:

[  ] YES      [ X ] NO

**If your response is "yes," all attorneys and unrepresented parties please sign the attached Consent to Proceed Before A United States Magistrate Judge to indicate your consent.**

Report dated:  April 23, 2009

**Attorneys for Plaintiff**

/s/  Scott E. Brady
Philip Bohrer (#14089)
Scott E. Brady (#24976)
**Bohrer Law Firm, LLC**
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile:  (225) 231-7000
Email: sbaudin@pbclawfirm.com
        scott@bradylawfirmllc.com

Patrick Pendley (#10421)
Stan P. Baudin (22937)
**Pendley, Baudin & Coffin**
24110 Eden Street
Plaquemine, Louisiana 70764
Telephone: (225) 687-6396
Facsimile:  (225) 687-6398
Email: sbaudin@pbclawfirm.com

**Attorneys for Defendants Transamerica Life Insurance Company and AEGON USA, Inc.**

/s/  Covert J. Geary
Covert J. Geary (#14280)
Sara Valentine (#30773)
**Jones, Walker, Waechter, Poitevent,
    Carrère & Denègre, L.L.P.**
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Facsimile:  (504) 582-8583
Email: cgeary@joneswalker.com
        svalentine@joneswalker.com

*176830*

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**THIRD DIVISION**

FILED 04/23/09 13:46:42
Pat O'Brien Pulaski Circuit Clerk
CR3 By _____

EDISON RUNYAN; DWIGHT PIPES;
EARL L. PURIFOY; JOHN ROSS,
As The Legal Representative Of
ELIZABETH ROSS; MARY WEIDMAN;
DURAIN WEIDMAN; MARION HARRIS;
and VAN R. NOLAN, Each Individually,
And On Behalf Of All Others Similarly Situated

**CASE NO. CV-09-2066-3**

**PLAINTIFFS**

**VERSUS**

TRANSAMERICA LIFE INSURANCE
COMPANY; LIFE INVESTORS INSURANCE
COMPANY OF AMERICA; MONUMENTAL
LIFE INSURANCE COMPANY; and
AEGON USA, INC.

**DEFENDANTS**

_____/

### ORDER GRANTING PRELIMINARY APPROVAL
### TO CLASS ACTION SETTLEMENT AND
### DIRECTING NOTICE TO SETTLEMENT CLASS

WHEREAS Plaintiffs Edison Runyan, Dwight Pipes, Earl L. Purifoy, John Ross as legal representative of Elizabeth Ross, Mary Weidman, Durain Weidman, Marion Harris, and Van R. Nolan in the above-captioned action ("Plaintiffs"), on behalf of themselves and on behalf of the Settlement Class (as defined below), and the Defendants Transamerica Life Insurance Company, Life Investors Insurance Company of America, and Monumental Life Insurance Company, all acting by and through their respective counsel, have agreed, subject to Court approval, to settle this litigation upon the terms and conditions stated in the Class Action Settlement Agreement filed with the Court on April 20, 2009 (the "Settlement Agreement"); and

WHEREAS the parties have jointly moved for preliminary approval of the Settlement Agreement, and the Court having reviewed the Settlement Agreement and supporting papers, and


EXHIBIT "B"

having held a hearing in this matter finds that good cause exists for the preliminary approval of the Settlement pursuant to Rule 23 of the Arkansas Rules of Civil Procedure as set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Preliminary Approval of Settlement. The proposed Settlement and terms of the Settlement Agreement are hereby preliminarily approved as sufficiently fair, reasonable, adequate, and in the best interest of the Class members to warrant sending notice to the Settlement Class. The Settlement Agreement is hereby incorporated by reference in this Order and all terms defined in the Settlement Agreement will have the same meanings when used in this Order.

2.    Settlement Class. For purposes of determining whether the terms of the proposed Settlement should be finally approved as fair, reasonable and adequate, the following Settlement Class is conditionally certified for settlement purposes only (the "Settlement Class" or "Class"):

> All persons in the United States: (i) who were an insured, covered person, or beneficiary under a Cancer Policy in force at any time from January 1, 2004 through the date of this Order; or (ii) who were an insured, covered person, or beneficiary under a Non-Cancer Actual Charges Policy which is in force at the time of this Order, or who submitted a claim for Actual Charges Benefits under a Non-Cancer Actual Charges Policy after the effective date of the 2006 Updated Claims Procedures; or (iii) the surviving spouse or legal representative of such persons defined in (i) or (ii).

The terms Cancer Policy, Non-Cancer Actual Charges Policy, and 2006 Updated Claims Procedures are defined in the Settlement Agreement and shall have the same meanings as used in this Order.[1]

---

[1] The Settlement Class does not include insureds or covered persons under critical illness or critical disease policies written on the following policy forms: 1CGCI100, 1CGCI1WF, CC200300, CC200311, CCCI0200, CCCI02AG, CP500700, CP5NR7MD, TCGCI100, TCGCI1CP, TPCI01FL, TPCI0FFL, TPSDC1NY, TPSDC2NY; provided however, that such persons may be Settlement Class members if they own or are a covered person under a separate

Excluded from the Settlement Class are the following:

    (a)    All persons who previously (A) entered into a written agreement with the Company releasing all claims relating to the meaning of "actual charges" under their Actual Charges Policy, or (B) entered into a written agreement with the Company surrendering their Actual Charges Policy and releasing all claims relating to their Actual Charges Policy;[2]

    (b)    All persons who, during the Class Period, were officers, directors, or employees of the Company; and

    (c)    All persons currently serving as judges or justices in the State courts of Arkansas and members of their immediate family.

The conditional certification of the Settlement Class above shall be for settlement purposes only and shall not constitute a finding or be deemed an admission by any of the Parties that the certification of a class would be appropriate outside of the settlement context or absent the Settlement Agreement. Neither the Company nor any of its affiliates shall be deemed to have waived any of their defenses or objections to class certification outside of the settlement context. If the Settlement Agreement is terminated or is not finally approved for any reason, the Company and its affiliates shall retain all of their objections and defenses to certification of any class for trial purposes, and neither Class Counsel nor any Representative Plaintiff or Settlement Class member shall offer the Settlement Agreement or the conditional certification under this Order as evidence in support of any motion to certify a class outside of the Settlement context or in any other proceeding.

---

Cancer Policy or Non-Cancer Actual Charges Policy otherwise bringing them within the definition of the Settlement Class.

    [2] The Company is defined as Transamerica Life, including Life Investors which merged into Transamerica Life effective October 2, 2008, and all of the predecessor companies of Transamerica Life or Life Investors that issued or administered a Cancer Policy or Actual Charges Policy within the Class Period.

3.     Class Representatives and Class Counsel.  Plaintiffs Edison Runyan, Dwight Pipes, Earl L. Purifoy, John Ross as legal representative of Elizabeth Ross, Mary Weidman, Durain Weidman, Marion Harris, and Van R. Nolan (collectively, the "Representative Plaintiffs") are preliminarily appointed as representatives of the Settlement Class, and the following attorneys for the Representative Plaintiffs are appointed as counsel for the Settlement Class ("Class Counsel"):

> Scott E. Brady, Esq.
> Philip Bohrer, Esq.
> BOHRER LAW FIRM, L.L.C.
> 8712 Jefferson Highway, Suite B
> Baton Rouge, Louisiana 70809
>
> Stan P. Baudin, Esq.
> PENDLEY, BAUDIN & COFFIN, LLP
> 24110 Eden Street
> Plaquemine, Louisiana  70764

If final approval of the proposed Settlement is not granted for any reason, this Order, including the above description of the Settlement Class and the appointment of Class Counsel and the Plaintiffs as class representatives, shall be automatically vacated.

4.     Settlement Administrator.  Epiq Systems, Inc. is hereby appointed as the agreed upon Settlement Administrator with the duties and responsibilities as set forth in the Settlement Agreement.  The Settlement Administrator shall retain records of all Claim Forms, Requests for Exclusion, and Notices returned as undeliverable, including original envelopes with postmark dates.  The Company shall pay the reasonable fees and costs of the Settlement Administrator in accordance with the terms of the Settlement Agreement.

5.     Notice Plan.  The Parties have prepared the written Notice of Proposed Class Action Settlement (the "Notice"), Publication Notice, and Claim Forms which are attached as exhibits to the Settlement Agreement and have been provided to and reviewed by the Court in

4

connection with the Joint Motion for Preliminary Approval of Class Action Settlement filed on April 20, 2009. These materials are to be used in conjunction with the Notice Plan set forth in Section 6 of the Settlement Agreement and as described below.

6.     Mail Notice. Within seven days after this Order, the Company shall deliver to the Settlement Administrator a list of the most current names and addresses of all insureds or their surviving spouses who are Settlement Class members and who can be identified through reasonable efforts from the electronic business records of the Company (the "Class Mailing List"). Within 21 days after the date of this Order, but not less than sixty (60) days before the date set by the Court for the Fairness Hearing, the Settlement Administrator will send by U.S. mail a copy of the Notice to all persons on the Class Mailing List. The Notice shall be in substantially the form as Exhibit A to the Settlement Agreement and shall include the Claim Forms required by the Settlement Agreement. The Settlement Administrator shall use the National Change of Address database (the "NCOA") in an attempt to obtain better addresses for any Settlement Class members without current addresses. The Settlement Administrator shall keep records of the Notices mailed and to whom, and any Notices that are returned as undeliverable.

7.     Publication Notice. Not less than forty-five (45) days before the date set by the Court for the Fairness Hearing, the Company shall cause to be published a summary notice of the Settlement twice within one week in *USA Today* (on dates falling on Monday through Thursday) not less than 1/8 page in size (the "Publication Notice"). This Publication Notice shall be substantially in the form of Exhibit B to the Settlement Agreement and shall contain the Exclusion Deadline and the Objection Deadline, and shall include an Internet website address where Settlement Class members may view and download a copy of the full Notice, the Claim

5

Forms, and the Settlement Agreement. The Publication Notice shall also include a toll-free phone number where Class members may call the Settlement Administrator to request a copy of the Notice and Claim Forms.

8.      Internet Site. No later than the first publication date of the Publication Notice, the Company shall establish an Internet website address where Settlement Class members may view and download a full copy of the Notice, the Claim Forms, and the Settlement Agreement and Exhibits. The Internet site shall also include a toll-free telephone number for contacting the Settlement Administrator.

9.      Proof of Notice. Prior to or at the Fairness Hearing, the Company or Settlement Administrator shall file with the Court a declaration or affidavit confirming proof of mailing of the Notice and proof of publication of the Publication Notice in accordance with the terms of this Order.

10.     Costs of Notice Plan. The Company shall pay the costs of printing and mailing the Notice and the costs of the Publication Notice as agreed in the Settlement Agreement.

11.     Approval of Notice Plan. The Court preliminarily finds that the Notice Plan, including the form and plan for dissemination of the Notice and the Publication Notice under the terms provided for in this Order and the Settlement Agreement, together with the posting of the Settlement Agreement and the Notice on the Internet website, is reasonable, constitutes the best notice practicable under the circumstances, includes individual notice to all members of the Settlement Class who can be identified through reasonable effort, is reasonably calculated to apprise Settlement Class members of all material terms of the Settlement and the effect of the Settlement, and is otherwise adequate and sufficient notice to all persons entitled to such notice,

6

and fully satisfies the requirements of the Arkansas Rules of Civil Procedure and the applicable requirements of due process.

12.     Fairness Hearing.  The Court will hold a hearing (the "Fairness Hearing") before the Honorable Jay Moody, in the Third Division of Pulaski County Circuit Court, 401 W. Markham, Little Rock, Arkansas 72201, on ___July___ 27___, 2009 at 9:30 A.m., to consider whether the Settlement should be granted final approval as fair, reasonable, and adequate under Ark. R. Civ. P. 23 and whether the proposed Final Order and Judgment which forms part of the Settlement should be entered approving the Settlement and dismissing this Action with prejudice.  During the Fairness Hearing, the Court will consider all aspects of the Settlement properly brought before the Court, including but not limited to the fairness, reasonableness, and adequacy of the Settlement, objections, if any, to the Settlement that are properly and timely presented, the proposed award of attorneys' fees, costs and expenses to Class Counsel, and the proposed incentive awards to the Representative Plaintiffs.  Upon request of the Parties and a showing of good cause or for purposes of the Court's schedule, the Fairness Hearing may be continued, adjourned or rescheduled by the Court without further notice to members of the Settlement Class.

13.     Exclusion.  Any Settlement Class member who wishes to opt out and exclude himself or herself from the Settlement Class must mail a written request for exclusion ("Request for Exclusion") to the Settlement Administrator no later than 45 days after the date on which the Notice is mailed to the majority of Settlement Class members as stated in the Notice (the "Exclusion Deadline").  In order to be valid and effective, the Request for Exclusion must be sent by first class mail properly addressed to the Settlement Administrator, postmarked on or before the Exclusion Deadline, and (A) must include the Class member's full name and address,

7

(B) must bear the individual signature of the person seeking exclusion, and (C) must clearly state that the Settlement Class member desires to be excluded from the Class. No persons shall be permitted to request exclusion from the Settlement Class on behalf of any other Settlement Class members, except that a legal representative or guardian may submit a Request for Exclusion on behalf of a deceased, incapacitated, or minor Class member. Each individual Class member seeking to exclude themselves from the Settlement, regardless of whether covered under the same Policy as another Class member, must submit an individually signed Request for Exclusion. Any attempt to frustrate the purpose of the Settlement by opting out a class or group of individuals shall be null and void.

All Settlement Class members who timely and properly submit a written Request for Exclusion to opt out and exclude themselves from the Settlement shall no longer be members of the Class; such persons shall have no rights under the Settlement, shall not share in the distribution of any funds under the Settlement, and shall not be bound by any Final Order and Judgment approving the Settlement. Any Class member who does not file a proper and timely Request for Exclusion that satisfies all requirements of this Order shall be considered a Class member for all purposes and shall be bound by the Final Order and Judgment.

The Settlement Administrator shall provide copies of all Requests for Exclusion to Class Counsel and counsel to the Company. On the date of the Fairness Hearing, the Settlement Administrator shall submit to the Court, under seal, a report listing all persons who timely filed Requests for Exclusion, and all persons who filed untimely Requests for Exclusion, providing for each such person the date the Request for Exclusion was postmarked, and the date it was received. A copy of the report shall be provided to Class Counsel and counsel to the Company.

14.     Objections.  Any Settlement Class member who does not request exclusion from the Settlement Class may object to the proposed Settlement by filing with the Court an Objection in writing, with a copy served to Class Counsel, counsel to the Company, and the Settlement Administrator, no later than 45 days after the date on which the Notice is mailed to the majority of Settlement Class members as stated in the Notice (the "Objection Deadline"). The right to object to the proposed Settlement must be exercised individually by an individual Class Member, not as a member of a group or class and, except in the case of a deceased, incapacitated, or minor Class member, not by the act of another person acting or purporting to act in a representative capacity. In order to be effective, an Objection must be in writing, filed with the Court, mailed to the Settlement Administrator, and served on Class Counsel and counsel to the Company by first class mail and facsimile by the Objection Deadline, and must contain:

(a)     A heading which includes the name of this case and the case number;

(b)     The name, address, telephone number, and signature of the Settlement Class member filing the Objection;

(c)     A detailed description of the nature and all grounds for the Objection, including any legal support the Class member intends to bring to the Court's attention, and copies of any documents or evidence that the Class member intends to introduce or present in support of the Objection;

(d)     The name, address, bar number, and telephone number of the objecting Class member's counsel, if represented by an attorney. If the Class member is represented by an attorney, he or she must comply with all applicable Arkansas laws and rules for filing pleadings and documents in Arkansas Courts;

9

(e)     A statement whether the Objector intends to appear at the Fairness Hearing, either in person or through counsel; and

(f)     A Certificate of Service showing that copies of the Objection were served on Class Counsel, counsel to the Company, and the Settlement Administrator on or before the Objection Deadline.

15.     Appearance of Objectors.  If a Settlement Class member or his or her attorney desires permission to speak at the Fairness Hearing for the purpose of objecting to the Settlement, the Settlement Class member must comply with all of the requirements for Objections in paragraph 14 and must file with the Court a notice of intent to appear on or before the Objection Deadline containing or accompanied by the following information:

(a)     The name, address, and telephone number of the person who intends to appear at the Fairness Hearing and a copy of the written Objection to the Settlement.

(b)     A detailed statement of the specific legal and factual basis for each ground for objection;

(c)     A list of any witnesses that the Objector would like to call at the Fairness Hearing, with the address of each witness and a summary of his or her proposed testimony;

(d)     A detailed description of any and all evidence the Objector may offer at the Fairness Hearing, including copies of any and all exhibits which the Objector may seek to introduce at the Fairness Hearing; and

(e)     Documentary or other proof of membership in the Settlement Class.

In order to be effective, copies of the notice of intent to appear must be filed with the Court and served by first class mail and facsimile to Class Counsel, counsel to the Company, and the Settlement Administrator on or before the Objection Deadline.  Persons who comply with

10

the above requirements will be permitted an opportunity to be heard at the Fairness Hearing to the extent allowed and deemed appropriate by the Court.

16.     Waiver of Right to Object or Exclude. Any Settlement Class member who fails to comply with the requirements of Paragraph 14 of this Order shall waive and forfeit any and all rights to object to the Settlement; any Settlement Class member who fails to comply with the requirements of Paragraph 15 of this Order will waive and forfeit any and all rights to appear and be heard at the Fairness Hearing.   Settlement Class members have the right to exclude themselves from the Settlement as described above if they wish to pursue a separate and independent remedy against the Company.   Settlement Class members who object to the proposed Settlement shall remain Class members, and have voluntarily waived their right to pursue an independent remedy against the Company.   If their objections to the proposed Settlement are overruled in whole or in part, they will be forever bound by the Final Order and Judgment of the Court. Settlement Class members can avoid being bound by any judgment of the Court by complying with the exclusion provisions set forth above.

17.     Injunction. Pending a final determination after the Fairness Hearing whether the Settlement should be approved as fair, reasonable, and adequate, all members of the Settlement Class, unless and until they have timely and properly excluded themselves from the Settlement Class, are hereby enjoined and prohibited from attempting to frustrate the purpose of the Settlement by doing any of the following:

(a)     commencing, filing, prosecuting, or participating in any other action or proceeding in any jurisdiction, either directly or indirectly, that asserts claims against the Company or the Released Parties which relate to a Cancer Policy or an Actual Charges Policy and fall within the definition of Released Claims under the Settlement Agreement; and

11

(b)   organizing Settlement Class members into a separate class or subclass for purposes of pursuing as a purported class action any lawsuit or proceeding in any jurisdiction (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) that asserts claims against the Company or the Released Parties which relate to a Cancer Policy or an Actual Charges Policy and fall with the definition of Released Claims under the Settlement Agreement.

18.   Communications. The Company is authorized to communicate with and respond to inquiries from policyholders and Settlement Class members orally or in writing, and to engage in any other communications within the ordinary course of the Company's business.   Any inquiries from Settlement Class members concerning the proposed Settlement shall be referred first to the Settlement Administrator, and if not resolved by the Settlement Administrator, then to Class Counsel. In the event of such referral, Class Counsel shall consult with the Company's counsel regarding any required interpretation of the Settlement Agreement.   To avoid any potential conflict with the Settlement Class, Class Counsel and their respective firms shall not encourage, solicit, or otherwise assist in any way, including but not limited to referrals to other counsel, any person requesting exclusion from the Settlement Class; this will not prevent Class Counsel from responding to questions from a Class member about the procedures under this Order for excluding oneself from the Settlement.

19.   No Admissions. Neither this Order nor the Settlement Agreement nor any proposals, negotiations, communications, documents, or discussions relating to the Settlement shall be considered, offered, or used in any action or proceeding as an admission of any wrongdoing, liability, or fault of any kind. Neither this Order nor the terms of the Settlement Agreement nor any proposals, negotiations, communications, documents, or discussions relating

12

to the Settlement Agreement may be introduced or used in any action or proceeding as proof of any fact or point of law, except in a proceeding before this Court to enforce the terms of the Settlement Agreement. The conditional certification of the Settlement Class for settlement purposes shall not be considered, offered, introduced, or used in any other proceeding as an admission of any kind that the certification of a class would be appropriate outside of the settlement context. If the Settlement Agreement is terminated or is not finally approved for any reason, the Company and its affiliates shall retain all of their objections and defenses to certification of any class for trial purposes, and no person shall offer the Settlement Agreement or the conditional certification under this Order as evidence in support of any motion to certify a class outside of the settlement context in any other proceeding.

20.     Termination of Settlement. In the event that the proposed Settlement is not finally approved by the Court, or the proposed Settlement is terminated or does not achieve Final Approval pursuant to the terms of the Settlement Agreement for any reason, this Order shall be without prejudice to the rights of the Parties, all of whom shall be restored to the extent possible to their respective positions existing immediately before this Court entered this Order. In such event, the proposed Settlement and Settlement Agreement shall become null and void and be of no further force and effect except as expressly provided in the Settlement Agreement.

21.     Stay. It is hereby ordered that this Action shall be stayed except for proceedings in connection with the effectuation of the proposed Settlement.

IT IS SO ORDERED, this the **25** day of April, 2009.

JAMES M. MOODY, JR.
PULASKI COUNTY CIRCUIT COURT JUDGE

13

APPROVED AS TO FORM:

Tom Thompson (ABA #77133)
Casey Castleberry (ABA #2003109)
MURPHY, THOMPSON, ARNOLD, SKINNER
  & CASTLEBERRY
Post Office Box 2595
Batesville, Arkansas 72503-2595
Telephone:  (870) 793-3821
Facsimile:  (870) 793-3815

Scott E. Brady (LSBA #24976)
Philip Bohrer (LSBA #14089)
BOHRER LAW FIRM, L.L.C.
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone:  (225) 925-5297
Facsimile:  (225) 231-7000

Stan P. Baudin (LSBA #22937)
PENDLEY, BAUDIN & COFFIN, LLP
24110 Eden Street
Plaquemine, Louisiana 70764
Telephone:  (225) 687-6396
Facsimile:  (225) 687-6398

*Counsel for Plaintiffs*

Lyn Pruitt (ABA #84121425)
John K. Baker (ABA #97024)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone:  (501) 688-8800
Facsimile:  (501) 688-8807

Markham R. Leventhal, Esq.
Julianna Thomas McCabe, Esq.
JORDEN BURT LLP
777 Brickell Avenue, Suite 500
Miami, Florida  33131
Telephone:  (305) 371-2600
Facsimile:  (305) 372-9928

*Counsel for Defendants*

**IN THE ARKANSAS SUPREME COURT**

**AUDREY HUNTER, WILLIAM SHEPHERD,**
**and DANIEL CRAGER**                                      **APPELLANTS**

v.                                      **CASE NO. 10-306**

**TRANSAMERICA LIFE INSURANCE CO.,**
**LIFE INVESTORS INSURANCE COMPANY OF**
**AMERICA; MONUMENTAL LIFE INSURANCE**
**COMPANY; AEGON USA, INC.;**
**EDISON RUNYAN; DWIGHT PIPES; EARL**
**L. PURIFOY; JOHN ROSS, As The Legal**
**Representative Of ELIZABETH ROSS;**
**MARY WEIDMAN; DURAIN WEIDMAN;**
**MARION HARRIS; and VAN R. NOLAN**                       **APPELLEES**

**DEFENDANT-APPELLEES' MEMORANDUM IN OPPOSITION**
**TO DANIEL CRAGER'S MOTION TO LIFT SEAL**
**FROM IDENTIFIED PORTIONS OF THE RECORD**
**AND MOTION FOR EXTENSION OF TIME TO FILE BRIEF**

Appellees Transamerica Life Insurance Company ("Transamerica"), Life Investors

Insurance Company of America ("Life Investors"), Monumental Life Insurance Company, and

AEGON USA, Inc. (collectively, the "Defendant-Appellees")[1] submit this response

memorandum in opposition to Appellant Daniel Crager's Motion to Lift Seal from Identified

Portions of the Record (the "Motion to Lift Seal") and Motion for Extension of Time to File

Brief (the "Extension Motion") (collectively, the "Crager Motions").[2]  For the reasons stated

---

[1] Effective October 2, 2008, Life Investors merged into its affiliate Transamerica.
AEGON USA, Inc. is now known as AEGON USA, LLC.  For purposes of convenience,
references to Transamerica include Life Investors unless otherwise indicated.

[2] Although this appeal is styled *Audrey Hunter, William Shepherd, and Daniel Crager v.*
*Transamerica Life Insurance Co., et al.*, it is a limited appeal from the denial of three motions to

*(footnote continued on next page)*

EXHIBIT
C

## BACKGROUND

### This Appeal

This appeal has been filed by three individuals whose motions to intervene in class action settlement proceedings were denied by the Circuit Court of Pulaski County in *Runyan v. Transamerica Life Insurance Company*, Case No. CV-09-2066-3 (Ark. Circuit Ct., Pulaski County). The *Runyan* Settlement involves a nationwide class action settlement of claims for the alleged breach of certain supplemental cancer insurance policies issued by Transamerica, Life Investors, and their predecessors.[6]   After extensive litigation and months of arms-length negotiations, the parties in *Runyan* reached a preliminary understanding on the terms of a global class action settlement, subject to completion and execution of a comprehensive settlement agreement. *See* R. 4887-4949, Findings, at 8-9, 13-14. Neither Crager nor his counsel had commenced any litigation against Transamerica at that time.

On March 13, 2009, eight plaintiffs filed this action in the Circuit Court of Pulaski County, consolidating the claims from six pending federal actions in the Circuit Court. *Id.* at 14. Motions to stay were filed in and granted by the federal courts pending a decision on approval of the Settlement by the Circuit Court.[7]   On April 23, 2009, the Circuit Court granted preliminary approval to the Settlement and approved a comprehensive Notice Plan which included personal notice mailed to over 250,000 Settlement Class members, Publication Notice in *USA Today*, a

---

[6] A small number of policies were also issued by Monumental Life Insurance Company.

[7] The six federal actions which were stayed pending a decision on the Settlement were: *Pipes v. Life Investors Insurance Company of America*, No. 1:07-cv-00035 (E.D. Ark.); *Runyan v. Transamerica Life Insurance Company*, No. 6:08-cv-6034 (W.D. Ark.); *Ross v. Life Investors Insurance Company of America*, No. 4:08-cv-00064 (S.D. Miss.); *Weidman v. Life Investors Insurance Company of America*, No. 2:08-cv-12870 (E.D. Mich.); *Harris v. Transamerica Life Insurance Company*, No. 09-13-JVP-SCR (M.D. La.); and *Nolan v. Life Investors Insurance Company of America*, No. 3:08-cv-00839 (M.D. La.). 4887-4949, Findings, at 8-9.

1

```
 1            IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
                              THIRD DIVISION
 2

    EDISON RUNYAN; DWIGHT PIPES; EARL L. PURIFOY; JOHN ROSS,
 3  As the Legal Representative of ELIZABETH ROSS; MARY
    WEIDMAN, DURAIN WEIDMAN; MARION HARRIS; and VAN R.
 4  NOLAN, Each Individually, and on Behalf of All Others
    Similarly Situated,
 5                                        Plaintiffs

 6  V.                          CV 2009-2066

 7  TRANSAMERICA LIFE INSURANCE COMPANY; LIFE INVESTORS
    INSURANCE COMPANY OF AMERICA; MONUMENTAL LIFE INSURANCE
 8  COMPANY; and AEGON USA, INC.,
                                  Defendants
 9  ----------------------------------------------------------

10

11

12

13        BE IT REMEMBERED, that on the 16th day of

14  September, 2009, the above-referenced cause came before

15  the Honorable Jay Moody for hearing.  The proceedings

16  were had and done as follows:

17

18

19

20

21

22

23

24                                         DORIGINAL

25
```


EXHIBIT "D"

TAMMIE L. FOREMAN, CRR, RPR, CCR
(501) 340-8426

005259

```
 1              A P P E A R A N C E S

 2   REPRESENTING THE PLAINTIFFS:
         CASEY CASTLEBERRY, Esquire
 3       Murphy, Thompson, Arnold, Skinner & Castleberry
         Post Office Box 2595
 4       Batesville, Arkansas   72503

 5       STAN P. BAUDIN, Esquire
         Pendley, Baudin & Coffin, LLP
 6       24110 Eden Street
         Plaquemine, Louisiana   70764

 7

 8   REPRESENTING THE DEFENDANTS:

 9       JOHN K. BAKER, Esquire
         Mitchell, Williams, Selig, Gates & Woodyard, PLLC
10       425 West Capitol Avenue, Suite 1800
         Little Rock, Arkansas   72201

11
         MARKAM LEVENTHAL, Esquire
12       JULIANNA THOMAS McCABE, Esquire
         Jorden Burt, LLP
13       777 Brickell Avenue, Suite 500
         Miami, Florida   33131

14

15

16   REPRESENTING THE SHEPHERD GROUP OBJECTORS/INTERVENORS:
         THOMAS O. SINCLAIR, Esquire
17       Campbell, Gidiere, Lee, Sinclair & Williams
         2100-A Southbridge Parkway, Suite 450
18       Birmingham, Alabama   35209

19       TODD TURNER, Esquire
         DAN TURNER, Esquire
20       Turner & Turner
         Post Office Box 480
21       Arkadelphia, Arkansas   71923

22

23

24

25
```

1   THE COURT:  We are on the record in civil case

2   2009-2066 -- I guess we could have just taken a recess

3   and come back.  I don't know.  We're still on the same

4   case.  Edison Runyan, et al, v. Transamerica Life, et

5   al, here on the Shepherd motions.  At least that's how

6   I denominated them.  I have a motion for leave to

7   intervene and a motion to set aside the preliminary

8   approval order, a motion of stay of proceedings, and a

9   request for a scheduling order.  Who is here on behalf

10  of William Shepherd?

11  MR. DAN TURNER:  Your Honor, Dan, Todd Turner,

12  and Thomas Sinclair.

13  THE COURT:  All right.  Then you guys have the

14  floor.

15  MR. DAN TURNER:  Thank you, Your Honor.  I

16  understand this Court has taken argument this morning

17  in one of the other intervenors' case.  I'll do my best

18  not to recite the procedural issues that I know the

19  Court is aware of.  And I'll also do my best not to

20  recite all the information that we've included in our

21  pleadings.  I will try to highlight those, Your Honor.

22  Of course, it's Mr. Shepherd's position that --

23  THE COURT:  Mr. Turner, let me interrupt you.

24  MR. DAN TURNER:  Sure.

25  THE COURT:  We've got plenty of time.  And do

1

```
 1            IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
                              THIRD DIVISION
 2
      EDISON RUNYAN; DWIGHT PIPES; EARL L. PURIFOY; JOHN ROSS,
 3    As the Legal Representative of ELIZABETH ROSS; MARY
      WEIDMAN; DURAIN WEIDMAN; MARION HARRIS; and VAN R.
 4    NOLAN, Each Individually, and on Behalf of All Others
      Similarly Situated,
 5
                                          Plaintiffs
 6
      V.                     CV 2009-2066
 7
      TRANSAMERICA LIFE INSURANCE COMPANY; LIFE INVESTORS
 8    INSURANCE COMPANY OF AMERICA; MONUMENTAL LIFE INSURANCE
      COMPANY; and AEGON USA, INC.,
 9
                                          Defendants
10
11                    A P P E A R A N C E S
12    REPRESENTING THE PLAINTIFFS:
          TOM THOMPSON, Esquire
13        Murphy, Thompson, Arnold, Skinner & Castleberry
          Post Office Box 2595
14        Batesville, Arkansas  72503
15        STAN P. BAUDIN, Esquire
          Pendley, Baudin & Coffin, LLP
16        24110 Eden Street
          Plaquemine, Louisiana  70764
17
          PHILIP BOHRER, Esquire
18        SCOTT E. BRADY, Esquire
          Bohrer Law Firm, LLC
19        8712 Jefferson Highway, Suite B
          Baton Rouge, Louisiana  70809
20
      REPRESENTING THE DEFENDANT:
21        JOHN K. BAKER, Esquire
          Mitchell, Williams, Selig, Gates & Woodyard, PLLC
22        425 West Capitol Avenue, Suite 1800
          Little Rock, Arkansas  72201
23
          MARKHAM R. LEVENTHAL, Esquire
24        JULIANNA THOMAS McCABE, Esquire
          Jordan Burt, LLP                    □ORIGINAL
25        777 Brickell Avenue, Suite 500
          Miami, Florida  33131
```



TAMMIE L. FOREMAN, CRR, RPR, CCR
(501) 340-8426

005805

```
 1    REPRESENTING NAOMI CROCKER:
         RICHARD T. PHILLIPS, Esquire
 2       JASON NABORS, Esquire
         Smith Phillips
 3       Post Office Drawer 1586
         Batesville, Mississippi  38606
 4
      REPRESENTING JACKIE QUEEN, HOWARD BARNHILL,
 5    JOANNE W. GIBSON, STEPHEN K. HEGE, AND LILLIAN LOGAN:
         PATRICK KNIE, Esquire
 6       Post Office Box 3544
         Spartanburg, South Carolina  29304
 7
 8    REPRESENTING WILLIAM SHEPHERD:
         TODD TURNER, Esquire
 9       DAN TURNER, Esquire
         Turner & Turner
10       Post Office Box 86
         Arkadelphia, Arkansas  71923
11
12
13
14
15         BE IT REMEMBERED, that on the 9th day of
16    November, 2009, the above-referenced cause came before
17    the Honorable Jay Moody for hearing.  The proceedings
18    were had and done as follows:
19
20
21
22
23
24
25
```

1   understand it, had granted class status, right?   That's

2   on appeal?   That's on appeal?

3       MR. LEVENTHAL:   That's not correct.

4       THE COURT:   That's why I was looking at you kind

5   of funny.   I had understood to the contrary.   And

6   really, the only thing I've been keeping up with the

7   Tennessee federal judge is if he's telling me what to

8   do and what not to do.   But -- that may be an

9   overstatement, but --

10      MR. MATTHEWS:   I think that's what it was.

11      THE COURT:   You can always say what you want

12  until the appellate court tells you otherwise.   But I

13  disagree that I'm resolving people's cases who decided

14  to opt out of this class action.   I don't think I'm --

15      MR. MATTHEWS:   Oh, I don't think you're deciding

16  the ones that's opted out.   That's not what I'm saying.

17  I'm saying that any other -- maybe I'm wrong.   It's my

18  understanding there had been class action certification

19  in other courts.   Is that wrong?

20      MS. McCABE:   That's wrong.

21      MR. MATTHEWS:   I apologize.

22      THE COURT:   You're not a very good class action

23  lawyer.

24      MR. MATTHEWS:   No.   I'll admit it.   I'll admit

25  that.   Another thing that's unfair about this is, they