IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ROBERT W. HALL                                                                                          PLAINTIFF

v.                                    Case No. 1:09-CV-00057-JLH

EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.                                                                                       DEFENDANTS

STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF TRANSAMERICA LIFE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Defendant Transamerica Life Insurance Company ("Transamerica") hereby submits this statement of undisputed material facts as to which it contends there is no genuine issue to be tried:

1. On September 17, 1994, plaintiff Robert W. Hall, an Alabama resident, applied in Linden, Alabama for a "Cancer Expense Policy" (the "Policy") from Equity National Life Insurance Company ("Equity National").[1]

2. Equity National issued Cancer Policy number 01E122807 to plaintiff effective September 17, 1994 on policy form EPC530. Policy at p. 2.

3. Plaintiff did not read the entire Policy when he received it in the mail, but he recognizes that he is bound by its terms. Deposition of Robert W. Hall, December 14, 2010, at

---

[1] Plaintiff's Policy, which includes plaintiff's Policy Application, is attached as Exhibit B to the Declaration of Connie Whitlock in Support of Transamerica's Motion for Summary Judgment. The Whitlock Declaration ("Whitlock Decl.") is attached as Exhibit 1 to Transamerica's Motion for Summary Judgment ("Transamerica's Motion").

97-99 ("Hall Dep.") (relevant excerpts of plaintiff's deposition attached as Exhibit 5 to Transamerica's Motion).

4. The Policy insures only for "loss incurred" from cancer, and the specific benefits provided are scheduled in the Policy at p. 1.

5. In order to receive benefits under the Policy, the insured must submit a written "proof of loss" for each "incurred expense." Policy, Section C, at p. 6; Policy, Section K, ¶¶ 8, 9.

6. Certain benefits in the Policy are subject to a limit or "cap." *See, e.g.,* Policy, Section E, ¶¶ 1, 2. The Policy cover page states in large bold font "**THIS IS A LIMITED POLICY – READ IT CAREFULLY**" (capitalization and emphasis in original). Policy at p. 1.

7. Several benefits in the Policy are based on the "actual charges" or "actual fee" for medical treatment or other non-medical services such as ambulance transportation. Policy, Section E, at pp. 6-12.

8. The Policy provision covering plaintiff's claim for benefits for his prostate surgery on July 27, 2006 (the "Surgery Claim") provides in relevant part: "We will pay the *actual fee* for a surgical operation . . . *not to exceed* the amount shown for that operation in the SCHEDULE OF OPERATIONS (pages 11-12) while you are Hospital Confined. . . ." Policy, Section E, ¶ 4 at p. 6 (emphasis added).

9. The Policy provision covering plaintiff's claim for benefits related to anesthesia services provided to him in connection with his July 27, 2006 prostate surgery (the "Anesthesia Claim") provides in relevant part: "While you are Hospital Confined, we will pay the *actual charges* for anesthesia *not to exceed* 25% of the surgical fee, per procedure/operation, as

determined by: . . . Item 4, "Surgery," in this section. . . ." Policy, Section E, ¶ 5, at p. 6 (emphasis added).

10. The Policy does not define the terms "actual charges" or "actual fee" but uses the words consistent with their plain and ordinary meaning and consistent with the Policy's expressed intent to provide insurance coverage for "loss incurred." Whitlock Decl. ¶¶ 6-7.

11. The Policy is guaranteed renewable so long as the premiums are timely paid. Premium rates are subject to periodic increases. *See* Policy at 1.

12. Today "[e]very hospital maintains a file system known as the chargemaster, which contains all billable procedure codes performed at the hospital, along with descriptions of those codes and the hospitals' own list prices."[2]

13. "Our health care system has become increasingly complex over time resulting in . . . a system that lacks transparency . . . especially with regard to medical pricing and billing documentation." Declaration of Glenn Alan Melnick, Ph.D. ¶ 4 ("Melnick Decl."), copy attached as Exhibit 6 to Transamerica's Motion.

14. The healthcare industry has seen "the evolution of what appears to be two sets of often highly divergent prices for medical services": "'list prices,' which are not the real prices at all and are rarely if ever actually paid; . . . [and] actual charges or real prices, which are the amounts that providers actually request to be paid, collect and accept as payment in full. The amounts generally listed on provider statements to patients are based on a providers' 'charge master,' a database containing a list of the different services along with the list prices, which are 'marked-up' above the actual or real prices that providers actually bill and are paid." *Id*. ¶ 6.

---

[2] Christopher P. Thompkins, Stuart H. Altman, and Efrat Eilat, *The Precarious Pricing System for Hospital Services,* 25 Health Affairs 45, 48 (2006).

15. The "list prices" in the "chargemasters" of many hospitals and other medical providers are grossly inflated and can be many multiples of the actual prices being charged and paid. Declaration of Marc Chapman ¶ 6 ("Chapman Decl."), copy attached as Exhibit 7 to Transamerica's Motion.

16. The difference between actual charges and list prices "has accelerated dramatically in recent years." Melnick Decl. ¶ 15. List prices in some cases can be three, four, or more than five times higher than the amounts that medical providers are actually charging and being paid for the treatments and services provided. *See* Declaration of Stephen Gwin ¶ 4 ("Gwin Decl."), copy attached as Exhibit 8 to Transamerica's Motion; Melnick Decl. ¶ 15.

17. "Because list prices are not the basis on which most transactions are paid, these prices are not tied to the marketplace in an economically meaningful way. Generally, providers can unilaterally raise the amounts in their charge masters at any time and to any level they choose without concern that there will be negative feedback from the market since the vast majority of transactions are not adjudicated based on payment of charge master amounts." Melnick Decl. ¶ 8.

18. Because "list prices are not the basis on which transactions are adjudicated, they do not represent the true or actual loss in most instances." *Id*. ¶ 9; *see also* Gwin Decl. ¶ 4 ("The documents or statements issued by medical providers which include 'list prices' are not genuine 'bills' and do not reflect an incurred expense or incurred loss, unless they contain a demand for payment or reflect an amount owed that must be paid, and then only to the extent of the amount that must be paid.").

19. In 2004, Life Investors and Transamerica began investigating the causes of premium rate increases to their policyholders and discovered they had been overpaying some

claims for "actual charges" because insureds were submitting documents as proof of loss that contained "list prices," instead of the actual amounts being billed, charged, and paid for medical treatment. Whitlock Decl. ¶ 10; Gwin Decl. ¶ 3.

20. In early 2006, Transamerica revised its claim forms and "proof of loss" instructions to ensure it would receive proper documentation and information to enable it to accurately pay "actual charges" going forward according to the total amounts actually owed to and accepted by medical providers as payment in full for the services rendered. Whitlock Decl. ¶¶ 13-14.

21. Transamerica's methodology is consistent with *all* state statutes defining "actual charges." *See* S.C. CODE ANN. § 38-71-242(A)(1) (2008); MO. REV. STAT. § 376.789(1)(2) (2009); TEX. INS. CODE ANN. § 1201.0601 (2005); OKLA. STAT. ANN. tit. 36, § 3651(A) (2006); GA. CODE ANN. § 33-24-16.1(a) (2006).

22. On February 10, 2006, Transamerica sent a letter to plaintiff at his home in Alabama enclosing a copy of its updated Claim Forms and Instructions (the "2006 letter"). Declaration of James Byrne, ("Byrne Decl.") ¶ 5 & Exh. A thereto, attached as Exhibit 3 to Transamerica's Motion.

23. The 2006 letter explained the meaning of "actual charges" as used in the Policy, the difference between "actual charges" and "list prices," and what type of "proof of loss" would be required under the Policy to support a claim for benefits based on actual charges. Whitlock Decl. ¶ 13 & Exh. D.

24. On June 5, 2006, plaintiff was diagnosed with prostate cancer. Byrne Decl. ¶ 7 & Exh. B; *see also* Hall Dep. at 135.

25. Plaintiff submitted a claim package to Transamerica in July 2006, including an Attending Physician's Statement, a Claimant's Statement, and a pathology report, which Transamerica received on July 20, 2006. Byrne Decl. ¶ 7.

26. Plaintiff's initial claim submission included no proof of loss for any incurred expenses. Byrne Decl. ¶ 7. It included a handwritten note stating that plaintiff would be undergoing prostate surgery by Dr. Stanley Wade on July 27, 2006 at Rush Foundation Hospital in Meridian, Mississippi. *Id*.

27. On August 4, 2006, Transamerica sent plaintiff a notice thanking him for the pathology report and requesting that he submit proof of loss in the form of itemized bills and explanation of benefit forms (EOBs) from his insurance carrier. *Id.* ¶ 8.

28. All EOBs, checks, and related correspondence, including Transamerica's 2006 letter to the plaintiff, were mailed to plaintiff in Alabama from Transamerica's administrative offices in Louisville, Kentucky. Byrne Decl. ¶ 17. Plaintiff submitted his claims to Transamerica from Alabama. *Id*.

29. Transamerica received no proof of loss or further documentation from plaintiff for over seven months. *Id.* ¶ 9.

30. In late March 2007, plaintiff submitted his proof of loss to Transamerica, which included multiple statements, Medicare Summary Notices, and United Healthcare EOBs related to his cancer treatment. *Id*.

31. All of plaintiff's claims were for services and treatments provided to him from May 2006 through September 2006. *Id*. Plaintiff's submission included documentation relating to his July 27, 2006 prostate surgery and anesthesia. *Id*.

32.     This submission in March of 2007 was the last submission of claims by plaintiff under his Policy. *Id*.

33.     In October of 2010, plaintiff cancelled his Policy and it is no longer in force. *Id*. ¶ 18; *see also* Hall Dep. at 186.

34.     At all relevant times, plaintiff was covered by Medicare with secondary coverage provided by United Healthcare. Chapman Decl. ¶ 7. As a result, most of the actual charges for plaintiff's medical treatment were paid by Medicare, and United Healthcare covered most of plaintiff's deductibles, co-payments, or co-insurance. *Id.* ¶ 12.

35.     Plaintiff was fully covered and paid none of his medical provider's actual charges for the July 27, 2006 surgery and anesthesia. The checks he received from Transamerica were simply cashed and saved by the plaintiff. Hall Dep. at 158, 167.

36.     Plaintiff "[v]ery seldom" pays any part of his own medical expenses. Hall Dep. at 206.

37.     Plaintiff's prostate surgery was performed by Dr. Wade on July 27, 2006, and Dr. Wade was only permitted to bill Mr. Hall and his insurers the Medicare allowed amount of $1,483.58 for the surgery. Chapman Decl. ¶ 14; Declaration of Kathy Holdiness ("Holdiness Decl.") ¶ 12, attached as Exhibit 4 to Transamerica's Motion.

38.     The fee for the surgery was paid in part by Medicare, and in part by United Healthcare. *Id.* ¶ 14. Specifically, Medicare paid $1,186.86, and United Healthcare paid $296.72 (for a total of $1,483.58) for the surgery. *Id.* ¶ 14; Holdiness Decl. ¶ 12; Hall Dep. at 204-05.

39. This total fee charged by and paid to Dr. Wade of $1,483.58 was equal to the Medicare allowed amount for the surgery. Holdiness Decl. ¶ 12; Chapman Decl. ¶ 14; Byrne Decl. ¶ 14.

40. Under federal law, neither Medicare nor plaintiff or United Healthcare were obligated to Dr. Wade or his billing company, Management Services Organization, for any amount in excess of the $1,483.58 Medicare allowed amount. Dr. Wade did not charge his maximum rates to the plaintiff and neither he nor his billing company made any attempt to obtain any payments from plaintiff or United Healthcare in excess of the Medicare allowed amount. Holdiness Decl. ¶¶ 6-8, 10-12.

41. Plaintiff acknowledges that Dr. Wade received $1,483.58 as payment in full for plaintiff's July 27, 2006 prostate surgery. Hall Dep. at 204.

42. Transamerica paid a benefit of $1,483.58 to plaintiff for the surgery. Byrne Decl. ¶ 15. Because plaintiff did not need this money for medical care, he was able to cash and save it. Hall Dep. at 158, 167.

43. Plaintiff did not expect to receive benefits payments from Transamerica of more than the amount his medical providers were paid. Hall Dep. at 209.

44. The record is devoid of any evidence that plaintiff suffered a "loss incurred" or submitted proof of any "incurred expense" exceeding $1,483.58 for his Surgery Claim.

45. Transamerica paid plaintiff $370.90 for the Anesthesia Claim, 25% of the surgical fee. Byrne Decl. ¶ 15. This was an overpayment of $181.79, because the Policy's anesthesia benefit is limited to the "*actual charges* for anesthesia *not to exceed* 25% of the surgical fee." Policy, Section E, ¶ 5, at p. 6 (emphasis added). The documents plaintiff submitted as proof of loss show that the actual charge for the anesthesia was $189.11. Byrne Decl. ¶ 15.

46. The record is devoid of any evidence that plaintiff suffered a "loss incurred" or submitted proof of any "incurred expense" exceeding $189.11 for his Anesthesia Claim.

47. Based on its review of plaintiff's March 2007 proof of loss, on April 12, 2007, Transamerica paid the Surgery and Anesthesia Claims along with other benefits scheduled in the Policy. *Id.* ¶ 10 & Exh. D.

48. In July 2007, Transamerica received notice from the Alabama Department of Insurance that plaintiff had complained he had not been "fairly compensated" for his March 2007 claim submission. *Id.* ¶ 11.

49. Transamerica reexamined plaintiff's claims, and on July 9, 2007, issued an additional payment of $737.50 to plaintiff at his Alabama address. *Id.* ¶ 11 & Exh. E. This additional payment, however, did not relate to the Surgery or Anesthesia Claims, which had previously been paid (with an overpayment of $181.79 for the Anesthesia Claim) on April 12, 2007. *Id.* ¶ 10 & Exh. D.

50. Plaintiff wanted to be paid the sum total of all amounts listed on every slip of paper he submitted to Transamerica without regard to the Policy's schedule benefit provisions. Hall Dep. at 161-62. Plaintiff had no understanding that there were specific benefits listed in the Policy. *Id.* at 162, 174. Plaintiff made no attempt to compare the explanation of benefits form he received from Transamerica to the terms of his Policy. *Id.* at 162. He believed he should have been paid $27,000 for his claims. *Id.* at 125.

51. After reviewing Transamerica's response, the Alabama Department replied to plaintiff as follows:

> [Transamerica] paid surgical benefits based on what Medicare had approved for it. The policy paid the maximum benefit of $200.00 per day for each day you were in the hospital, according to the policy provisions. All other benefits were paid according to the policy schedule. We are

9

>    sorry you[r] policy could not pay more toward your claims but due to it being a Limited Benefits Contract it does not.

Letter from Alabama Department of Insurance to Robert W. Hall, dated August 1, 2007, copy attached as Exhibit 9 to Transamerica's Motion.

52. Plaintiff did not agree with the Alabama Department of Insurance's analysis of his claims, but decided that he "wasn't going to do anything else." Hall Dep. at 179.

53. This lawsuit was filed after plaintiff received a solicitation call from an attorney named Hutsler who "saw where [plaintiff] had contacted the Alabama Insurance Commissioner." *Id.* at 49.

Respectfully submitted,

*/s/ John K. Baker*

| | |
|---|---|
| Markham R. Leventhal, Esq. | John K. Baker, Esq., Ark. Bar No. 97024 |
| Farrokh Jhabvala, Esq. | MITCHELL, WILLIAMS, SELIG, |
| Julianna Thomas McCabe, Esq. | GATES & WOODYARD, P.L.L.C. |
| JORDEN BURT LLP | 425 West Capitol Avenue, Suite 1800 |
| 777 Brickell Avenue, Suite 500 | Little Rock, Arkansas  72201 |
| Miami, Florida  33131 | Telephone:  (501) 688-8800 |
| Telephone:  (305) 371-2600 | Facsimile:  (501) 918-7850 |
| Facsimile:  (305) 372-9928 | jbaker@mwlaw.com |
| ml@jordenusa.com | |
| fj@jordenusa.com | *Attorneys for Defendant Transamerica Life Insurance Company* |
| jt@jordenusa.com | |

CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, Florida 32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served by First-Class U.S. mail upon the following on this 21th day of December, 2010:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, Florida 32601

                                          */s/ John K. Baker*

191580